IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVELYN VILLANUEVA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 11-5344 |

REPORT AND RECOMMENDATION

JACOB P. HART                                                                   DATE:   September 4, 2012
UNITED STATES MAGISTRATE JUDGE

      Evelyn Villanueva brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded. For the reasons that follow, I recommend that Villanueva's Request for Review be denied.

I.      <u>Factual and Procedural Background</u>

      Villanueva was born on October 2, 1953.  Record at 136.  She completed the tenth grade in school.  Record at 181.  She worked in the past as a press operator, and taking care of the elderly.  Record at 43-44.

      On October 31, 2008, Villanueva filed her application for SSI benefits.  Record at 136. She asserted disability since December 1, 2000, caused by back and knee pain, numbness in the fingers, and depression.  Record at 177.  Her application was initially denied.  Record at 72. Villanueva then sought *de novo* review by an Administrative Law Judge ("ALJ").  Record at 81.

A hearing was held before the ALJ on June 15, 2010.  Record at 41.  At the hearing, Villanueva amended her disabled date to April 24, 2009, the date she was involved in a motor vehicle accident.  Record at 33-34.  In a decision dated July 12, 2010, however, the ALJ found that Villanueva was not disabled.  Record at 12.  The Appeals Council denied Villanueva's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner.  Record at 1.  Villanueva then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i)  At the first step, we consider your work activity if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii) At the second step, we consider the medical severity of your impairment(s).  If you do

> not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.   The ALJ's Decision, and Villanueva's Request for Review

In his decision, the ALJ found that Villanueva suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, and a major depressive disorder. Record at 17. Although Villanueva had been diagnosed with carpal tunnel syndrome, the ALJ did not find that this constituted a severe impairment. Id.

The ALJ decided that Villanueva retained the RFC to engage in light work requiring only simple, routine, repetitive tasks, and simple work-related decisions with few workplace changes. Record at 19. Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Villanueva could return to her prior work as a press operator. Record at 22-23. He concluded, therefore, that Villanueva was not disabled. Record at 23.

In her Request for Review, Villanueva maintains that the ALJ erred in failing to find her carpal tunnel syndrome a severe impairment. She also argues that – given her carpal tunnel syndrome and her back problems – the ALJ erred in failing to include a manipulative limitation

in the hypothetical questions he posed to the vocational expert, and that she cannot perform the frequent reaching, handling and fingering required of a press operator. She argues that, if she cannot return to her prior work, she is appropriately found disabled under Rule 202.02 of the Medical-Vocational Guidelines (the "Grids"). Villanueva also argues, more generally, that she is unable to perform light work.

IV.   Discussion

A.   Grids Rule 202.02: The Manipulative Limitation

If Villanueva meets the requirements of Rule 202.02 of the Grids by virtue of her inability to return to her former work as a press operator, she is entitled to receive benefits. This Rule provides that a claimant who is of advanced age, has a limited education or less, and has no transferable job skills must be found disabled. Rule 202.02, 20 CFR Part 404, Subpart P, App. 2, Table 2 (2011).

Villanueva undoubtedly meets these criteria. She was 55 years old when she filed her petition for benefits. That is considered "advanced age" under the Social Security regulations. 20 CFR § 404.1563(e). She has a limited education. 20 CFR § 404.1564(b)(3). According to the vocational expert, she has no transferable skills acquired during her semi-skilled job as a home care aide (the position of press-operator is unskilled). Record at 58.

Nevertheless, meeting a grid listing does not render a claimant unemployed if she is able to return to vocationally relevant past work. 20 CFR Part 404, Subpart P, App. 2, § 200.[1] In this

---

[1] This section states, in part: "The following rules reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work."

case, the ALJ found that Villanueva was not disabled because she could return to her past work as a press operator.

As Villanueva has pointed out, the position of press operator requires frequent reaching, handling and fingering. Dictionary of Occupational Titles at No. 690.685-014, attached to Villanueva's Request for Remand. She argues that it was error for the ALJ to fail to find her limited in any of these areas.

On December 28, 2009, Villanueva was diagnosed with bilateral carpal tunnel syndrome – moderate in the right, and mild on the left – following an EMG and nerve conduction study. Record at 306. Even before the carpal tunnel syndrome was diagnosed, Dr. Leonard Popowich, an independent examining physician, reported parasthesias (abnormal sensation, such as prickling), and a slightly reduced grip strength. Record at 596 (Report of February 9, 2009). Record at 292. The chiropractors at Philadelphia Pain Management noted complaints of numbness and tingling in the hands. Record at 313, 325, 339, 486.

Moreover, as the ALJ has recognized, Villanueva has a severe impairment of the cervical spine. An MRI taken May 13, 2009, showed "significant central disc herniation with cervical cord impression" at C5-C6. Record at 301. Her treating practitioner, Dr. Arun Mohanty, limited her to occasional reaching in a Medical Source Statement dated February 15, 2010. Record at 292.

Nevertheless, there is also evidence supporting the ALJ's conclusion that Villanueva has not demonstrated a manipulative limitation. Even Dr. Mohanty, who found Villanueva's reaching to be limited, and otherwise found her seriously impaired in almost every possible way, found that she could "frequently" engage in handling, fingering and feeling. Record at 292. This suggests that Villanueva's carpal tunnel syndrome, which had been diagnosed the year

previously, was not a factor in his evaluation of her physical abilities.  In fact, there is no evidence that Villanueva was ever treated for carpal tunnel syndrome.

Further, even though Villanueva's treating chiropractor at Philadelphia Pain Management reported on January 20, 2010, that repetitive reaching "may" exacerbate her symptoms, there is no treatment note actually reporting a limitation in Villanueva's ability to reach.  Record at 312.  A November 11, 2009, report from Pain Management stated that the sensation in her upper extremities was normal, and she had a negative Tinel's Sign bilaterally, indicating an absence of nerve damage.  Record at 324-326, Dorland's Illustrated Medical Dictionary, 31st ed., at 1741 (2007).

The evidence of a manipulative limitation is, therefore, somewhat equivocal.  The duty of resolving conflicting medical evidence belongs to the ALJ, who is the trier of fact in this context.  Richardson v. Perales, 402 U.S. 389, 399 (1971).  The court's role is limited to determining whether a decision is supported by substantial evidence.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999), citing 42 U.S.C. § 405(g), and Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  For this reason, an ALJ's decision should not be set aside if it is supported by substantial evidence, even if the factual inquiry could have been decided differently.  Hartranft, supra.

Given the presence of substantial evidence supporting the ALJ, the evidence of a manipulative impairment is not sufficiently strong to warrant reversal of the ALJ.  Nor is remand warranted, since it does not appear that the ALJ ignored medical evidence, but rather, that he failed to reach the conclusion Villanueva recommends.

B.	The Ability to Perform Light Work

Villanueva also appears to argue more generally that the evidence shows she is unable to perform light work.  As mentioned above, a May 13, 2009, MRI has shown that Villanueva suffers from disc herniation in her cervical spine.  Record at 301.  An MRI of the lumbar spine, taken the same day, also showed a central left disc bulge at L4-L5, with foraminal encroachment, and a small annular tear at L5-S1.  Record at 325.  The ALJ found that these were severe impairments.

Dr. Mohanty, Villanueva's treating physician, indicated in the Medical Source Statement he completed that she could only sit for 2-4 hours in a workday, and could only stand or walk for one hour.  Record at 291.  Dr. Leonard Popowich, an independent examining physician, also indicated on February 9, 2009, that Villanueva could only sit for 1-2 hours in a day, and could walk or stand for an hour or less.  Record at 598.  These limitations are obviously work-preclusive.  Villanueva's chiropractors at the Philadelphia Pain Clinic continually reported pain, and a limited range of motion in her cervical and lumbar spine.  Record at 303, 329, 486.

Nevertheless, in a case such as this, where an ALJ concludes that a medical impairment exists which could reasonably cause pain, he must still evaluate the intensity and persistence of the pain, and the extent to which it affects the claimant's ability to work.  20 CFR § 404.1529(b) and (c); Hartranft v. Apfel, supra, at 358.  In doing so, he is entitled to consider the internal consistency of the claimant's own statements and the claimant's medical treatment history, as well as the medical evidence.  20 CFR § 1529.

Here, the ALJ pointed out that Villanueva's treatment history, while lengthy, is very conservative. No doctor seems to have proposed back surgery, or even steroid injections, even following the 2009 car accident (and Villanueva originally alleged disabling back pain *before* the car accident). There is a mention in Dr. Popowich's report of Villanueva having taken Vicodin. Record at 594. However, by the time of the hearing, Villanueva was taking only prescription-strength Ibuprofen, alternated with over-the-counter medications. Record at 40. She did not treat regularly with an orthopedist. Even one of the later chiropractor notes, dated September 30, 2009, reported pain, but a normal range of motion in the lumbar and cervical spine. Record at 339. This is inconsistent with the extreme limitations found by Drs. Mohanty and Popowich.

Considering the medical record as a whole, the ALJ was entitled to conclude that, although Villanueva was limited by her back pain, she could engage in light work. As above, the evidence does not so strongly favor Villanueva as to warrant remand or a reversal of the ALJ.

V.   Conclusion

In accordance with the above discussion, I make the following

**R E C O M M E N D A T I O N**

AND NOW, this   day of     4th  , 2012, it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be DENIED and that Judgment be entered in this case in favor of the Defendant.

BY THE COURT:

/s/Jacob P. Hart

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE